UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: 4022 GEORGIA AVE., LLC<br><br>DEBTOR | Chapter 7<br>Case No. 23-00306-ELG |

**CREDITORS Nick Komljenovic, Darinka Komljenovic,
Kushan Dave, Swati Sachdeva and 4022 GEORGIA AVENUE
CONDOMINIUM ASSOCIATION's OBJECTION TO STEVEN M.
SUSHNER'S SUPPLMENT TO MOTION TO REIMBURSE SUSHNER
FOR SPECIAL COUNSEL FEES INCURRED**

Now comes Nick Komljenovic, Darinka Komljenovic, Kushan Dave, Swati Sachdeva and 4022 GEORGIA AVENUE CONDOMINIUM ASSOCIATION ("Creditors") by undersigned counsel and responds to Steven M. Sushner's ("Sushner") Motion to Reimburse Sushner for Special Counsel Fees. Sushner's request for reimbursement of special counsel fees is contrary to 11 U.S.C. §§ 327, 330, 331, 503 and 507.

The reason the fees and expenses were incurred was to protect and benefit Steven M. Sushner, not the estate. In his own words, Mr. Crawford represented to the OAH Judge:

> ***I do represent Mr. Sushner personally*** … I don't have any ability to take action on behalf of the LLC … And ***we have the District of Columbia saying if there is a finding in favor of the District on this issue, then it is contemplating an action to pierce the corporate veil of the bankrupt LLC***, and ***that would be to reach Mr. Sushner***, who I do not know what the plan would be for his participation in this hearing again, if any. And ***I just need to make sure I protect the interests of my client***. (*See* Transcript of OAH Telephonic Hearing, Feb. 8, 2024 (**Exhibit 7** at 1-2)).

In his statement to the OAH Judge, Mr. Crawford makes it clear that: (1) if there is a finding in favor of District, (2) the District will go after Mr. Sushner personally, (3) the reason Mr. Crawford is participating in the OAH proceeding is to protect Mr. Sushner, personally. He admits that he "represents Mr. Sushner personally" and that he is there to protect Mr. Sushner (*"I just need to make sure I protect the interest of my client."*). The driving force is to protect Mr. Sushner personally from the liability that would attach against Mr. Sushner if the District prevailed in the OAH case.

Mr. Crawford's fear of the District imposing liability against Sushner was very well founded because it is supported by law and precedent. *See* for example a recent [2024] case. *Dist. of Columbia v. MP PPH, LLC*, 2024 D.C. Super. LEXIS 37 at *24 (D.C. Super. 2024) *(enforcing the District's imposition of liability against officer of an LLC for building code violations, and inhabitability of residential apartment building)*. There was no benefit to the estate or the LLC as it was already bankrupt, and the District made it clear its intention was to go after Mr. Sushner personally.

Subsection (a) of 11 U.S.C §§ 327 provides that "(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, **that do not hold or represent an interest adverse to the estate, and that are disinterested persons**, to represent or assist the trustee in carrying out the trustee's duties under this title." Sushner's actions were not in the interest of preserving the estate. Rather, they were self-serving as Sushner does not have standing to advance his individual claims or that of the Debtor. The only member of the Debtor is the Trust Agreement of Steven Michael Sushner ("Trust") and not Sushner individually. **See Exhibit 1 (4022 Georgia Ave LLC Operating Agreement).**

Sushner's request also fails under 11 U.S.C §§ 503. Section 503(b)'s substantial contribution provision "is intended to promote meaningful ... participation in the reorganization process, but not to encourage mushrooming administrative expenses." In re Alert Holdings Inc., 157 B.R. 753, 757 (Bankr.S.D.N.Y.1993). That is, "[c]ompensation must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate." Id. Here, there was no demonstrable benefit to the estate from Sushner's actions. Only Sushner individually stands to benefit to the detriment of the HOA and the unit owners.

I. **Background and Procedural Posture**

The fees that Sushner seeks reimbursement for relate to the services of Special Counsel[1] in their representation of Debtor in a 2-day evidentiary hearing before the District of Columbia Office of Administrative Hearings ("OAH") that took place on April 9-10, 2024 ("the OAH Hearing") and the subsequent appeal. Sushner lost in those proceedings and was ordered to correct and make necessary repairs to the building. **See Exhibit 2 (Final Order).** It was determined by inspections by DCRA,[2] structural engineers and private inspectors that the construction was carried out illegally, in violation of numerous building codes, and that the entire building suffered from serious foundational and structural defects.

Mr. Sushner has argued that he was precluded from making repairs with the false claim that the unit owners, who are now objecting to his request for fees, prevented him from complying with the order. The fact is that the unit owners wanted the repairs made, as they were necessary to make their properties safe and maintain their property values. Throughout these proceedings and those before OAH, Sushner has acted solely for his individual benefit and not that of the Debtor, and certainly not the interests of the unit owner creditors. The unit owners simply requested information as to how Sushner was going to address the building defects and never prevented him from making repairs. Sushner's never intended to make the repairs and was simply delaying and subsequently filed for bankruptcy. His February 22, 2022, email demonstrates that he was not truly concerned with getting the work completed as any delay in obtaining permits would strengthen his position. **See Exhibit 3 (Sushner Email).**

The Unit Owners never prevented Mr. Sushner from doing necessary repairs. Sushner, at every turn, avoided his responsibilities and delayed. The unit owner's, through counsel, copied a letter to Sushner's attorney and made it clear that he could access the property to begin work. They simply needed further clarification of Sushner's plan. **See Exhibit 4 (Email to DCRA Counsel for Sushner).** In fact, the unit owners specifically informed Mr. Sushner that he could begin making the necessary repairs in May

---

[1] Of note, Special Counsel has been representing Sushner *individually* in related proceedings (2022-CA-000305-B), both when he was a party to the action and after. Specifically, Mr. Crawford and Mr. Powell have been involved in efforts to quash subpoenas to an entity which Sushner formerly owned—completely unrelated to the Debtor. Sushner's use of his own personal attorneys to serve as Special Counsel in the OAH matter, where the only perceivable individual or entity who may benefit is himself, only further emphasizes that these fees were never incurred to protect the Debtor.

[2] Specifically, the D.C. Department of Consumer and Regulatory Affairs (the "DCRA")

of 2022. **See Exhibit 5 (HOA Email to Sushner).** Rather than begin making the repairs, Sushner continued to delay beginning the necessary repairs. Debtor filed this bankruptcy case on October 20, 2023, to avoid liability for making repairs, leaving the unit owners/creditors to live in a dangerous and defective property. Now, by claiming that he is entitled to reimbursement for the special counsel fees, he seeks to cause further harm to the unit owners and the building association by depriving them of what little funds that may be available to make the necessary repairs.

## II.     Argument

Mr. Sushner has filed a claim as creditor seeking a total of $44,067.58 for special counsel fees.[3] Mr. Sushner is not a creditor, he has no standing and cannot recover sums he spent for his *own* benefit. As demonstrated in **Exhibit 1**, the sole member and manager of the Debtor is the Trust. Even if we are to say the $44,067.58 Mr. Sushner is claiming is valid, it does not justify him spending (as he alleges) over $100,000 in attorney's fees and charging the estate (purportedly to recover the $44,067.58 from the bankruptcy estate). If he were a true creditor, he would have worked to preserve the assets of the Debtor's estate, not deplete it (after bankrupting it). Sushner argues that defending against the lawsuit and the OAH proceedings were necessary to preserve the Debtor's estate assets. When in fact, the OAH proceedings serve as a second enforcement action which would have ***protected*** the interests of the Creditors.[4] However, none of Mr. Sushner's claim would be enforced in state law against the Debtor. See In re Balt. Emergency Servs. II, 401 B.R. 209, 60 Collier Bankr. Cas. 2d (MB) 1169, 2008 Bankr. LEXIS 2691 (Bankr. D. Md. 2008) (no standing because the claim would not have been enforced under state law.) In the present matter, given that Mr. Sushner lost in those proceedings, he did not preserve estate assets. Rather, he is attempting to encumber the estate with $44,067.58 for special counsel fees.

"[T]he applicable test is whether the efforts of applicant resulted in an actual demonstrable benefit

---

[3] Money alleged to have been paid "to the Law Offices of Mark D. Crawford, PLLC ($20,252.58), and Offit Kurman, PA ($23,815.00) for legal services rendered to Mr. Sushner himself (not for the Debtor). Mr. Sushner cannot recover these amounts.
[4] "DOB's objective in issuing the OTC is to protect the safety, welfare, and consumer rights of DC residents." **Exhibit 2** at 5.

4

to the debtor's estate and the creditors." Lebron v. Mechem Financial, Inc., 27 F.3d 937, 944 (3d Cir. 1994) (quoting In re Lister, 846 F.2d 55, 57 (10th Cir.1988)) (emphasis added). Sushner argues that his efforts were necessary to prevent the DOB and the District of Columbia Office of the Attorney General from taking enforcement actions against the Debtor. However, by Debtors own admission "The District of Columbia did not take any action in response to Debtor's December 16, 2021, Notice of Appeal from the OTC for well over a year. Instead, DOB advised Debtor on January 17, 2023, that it was compiling its records "in advance of a civil action against your client, 4022 Georgia Avenue LLC, among others, concerning the failure to comply with the December 2, 2021, Order to Correct concerning 4022 Georgia Avenue, N.W." Had Debtor made a good faith effort to address the defective construction, or even better, properly construct the building to code from the beginning, there would not have been any enforcement proceedings for the Debtor to deal with. Seeking reimbursement for an issue the Debtor caused is unjust. Particularly in this case when the only parties harmed are the unit owners and the HOA.

The February 7, 2022, email from the HOA on which Sushner relies to insist that the Creditors in any way hindered his "good faith" efforts to rectify the hazardous building condition is not only inconsistent on its face with Sushner's argument, but also entirely inconsistent when placed in the surrounding context.[5] The *second sentence* of the email states plainly: "The HOA will, of course, consent to your applying for a permit to make corrections to the building's lack of lateral support." The email emphasized the understanding of the Creditors "that the installation of a moment frame is highly invasive and will likely lead to a 70% - 80% teardown of the building." The moment frame design was not a proposal to simply correct—it was for a nearly complete teardown and reconstruction of the Property. Even so, Creditors were more than willing to consent to the plan if Sushner would address their concerns, in the context of the actual building that was standing and not the original plans. Sushner ignores nearly the entirety of the email to rely on point 10 in claiming the Creditors in any way to obstruct his efforts (which as indicated by Exhibit 3, were likely never made in good faith and only in an effort to strengthen his "position").[6] While

---

[5] This email has been attached hereto for the convenience of the Court as **Exhibit 6**.
[6] While we deal with Mr. Sushner here as the owner of a title company and the owner of the owner of the Debtor, Mr. Sushner is an attorney by trade—and to be frank, a rather skilled one. At every step along the way in his dealings with

5

mischaracterizing the concerns addressed in point 10, Sushner ignores the Creditors very real concerns relating to, *inter alia*: (1) the safety of the building, (2) their displacement from their homes, (3) **the as-built building was not the same as the plan drawings on which the proposal was designed**, (4) costs, (5) quality control, and (6) losses they may incur relating to property value. The OAH Final Order already discredited Sushner's characterization of this email as a list of "demands." **Exhibit 2** at 4 ("Although [Debtor] described the owners' requests as demands, the email exchange demonstrates the back and forth as the parties tried to reach an agreement.")[7]

Particularly interesting is the OAH's finding that "There is no evidence that DOB is trying to recover costs, fines, damage, or other financial costs from Petitioner … 4022 LLC's lack of resources does not diminish DOB authority to make DC residents safe nor has 4022 LLC provided any authority to that point." **Exhibit 2** at 5. Not only did OAH acknowledge that DOB has made **no** indication of intent to fine the Debtor or recover any costs, the OAH *acknowledged* the Debtor's lack of resources in a manner which, one can imagine, is particularly concerning to Sushner's own financial interests. *See Dist. of Columbia v. MP PPH, LLC*, 2024 D.C. Super. LEXIS 37 at *24 (D.C. Super. 2024). OAH has acknowledged DOB's authority to act within the "government police or regulatory exception" relating to the OTC. Id. Such exercise may be readily accompanied by personal liability for Sushner, as the manager of Debtor, or his trust as Debtor's sole owner—but as for the Debtor, it may only be required to pay someone else to repair the property, rather than give the money directly to the Creditors. There is no substantial difference in what the OAG may require Debtor to do, and how this Court may devise the remaining assets of the estate.

The Court even took the time to note in the most recent hearing, on January 24, 2025, that without a complete record of the administrative proceedings, the Court would not have all the information needed to make a determination as to whether the Debtor needed to be involved. Specifically, the Court asked what

---

Creditors on behalf of Debtor, he has worked strategically to protect his own financial interests without regard or care for the damage Creditors would, did, and continue to, suffer.

[7] The OAH appeal designates as an issue for remand whether Creditors would not "allow" Debtor to secure the necessary permits to complete the repairs required to make the Property safe. Attached here is **explicit** approval for Debtor to pull the necessary permits to make the repairs, as well as a prior conditional approval, so long as the Creditors' very real and relevant concerns with the proposal were addressed. **Exhibits 4, 6;** *see also* **Exhibit 2** at 4.

the impact was of the appellate proceeding was legally and why it would benefit the estate—Mr. Sushner fails to address these points nearly entirely. Sushner provides at ¶ 13 that the OAG "desisted in their threats of enforcement" upon notice of the appeal and reversed summary disposition of the OAG action in favor of Creditors. OAG enforcement would have only required the Debtor to satisfy, at least in part, the debts which Creditors are owed—far from contrary to what this Court is in the process of administrating. Sushner's argument that "Debtor cannot be compelled to do that which it is without authority to do" is an inaccurate representation of Debtor's obligations, as much as it completely ignores the OAH's finding that "There is no requirement that the OTC be served on the owners to be valid and this is not an instance where 4022 LLC has no obligation to make the repairs." **Exhibit 2** at 8. Sushner has failed to provide the necessitated complete record of the OAH proceedings and attempts to provide this Court only an argumentative narrative, at best, of the position he has taken in this proceeding as well as that one.

Steven M. Sushner filed the bankruptcy petition on behalf of 4022 Georgia Ave., LLC, even though it was the Trust that was the sole member, to avoid personal financial responsibility from not only its lenders, but to the HOA and each of its individual owners. Sushner's actions are purely designed to compensate him for a problem that he created and has failed to address. For the reasons stated above, his request for reimbursement should be denied and the trustee allowed to make distributions to creditors as proposed in the trustee final report issued on November 20, 2024.

III.     **Conclusion**

Sushner should not be compensated for a harm he caused, when he had every opportunity to address before there was litigation. His actions were self-serving and not for the benefit of the estate. Sushner individually was not even a member of the Debtor, the Trust was. Allowing reimbursement would cause further diminution of the estate and reduce funds necessary to make repairs to the property.

Respectfully submitted,

/S/ Jamison B. Taylor
Jamison B. Taylor Bar# 457280
1218 11th St. NW
Washington, DC 20001
T: 202-792-5850
F: 202-478-2146
jtaylor@rismllc.com

*Counsel for Kushan Dave, Swati Sachdeva, Nick Komjenovic, Darinka Komjenovic and 4022 Georgia Avenue Condo Association*

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2025, I caused a copy of the foregoing to be served via the Court's CM/ECF on all counsel of record and the U. S. Trustee's Office.

/s/ Jamison B. Taylor
Jamison B. Taylor